UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MICHAEL J. MARONEY, as TRUSTEE
OF PREMIERE REALTY TRUST and
MARONEY CONSTRUCTION
COMPANY INC.,                                    No. 16-CV-11575-DLC

          Plaintiffs,

v.

JAMES J. FIORENTINI,
INDIVIDUALLY and in his
capacity as MAYOR of the CITY
OF HAVERHILL, ROBERT E. WARD,
INDIVIDUALLY and in his
capacity as DEPUTY DIRECTOR OF
PUBLIC WORKS OF THE CITY OF
HAVERHILL, WATER/WASTEWATER
DIVISION, and THE CITY OF
HAVERHILL,

          Defendants.


**MEMORANDUM AND ORDER ON DEFENDANTS' MOTION FOR JUDGMENT ON THE
PLEADINGS (Dkt. #24) AND PLAINTIFFS' MOTION TO AMEND (Dkt. #27)**


CABELL, U.S.M.J.

     This case arises from developer Michael Maroney's efforts to

complete a subdivision of homes in the city of Haverhill ("the

City"). Having been denied certain permits, he brought suit

through his business entities against the City and two of its

officials, for violations of 42 U.S.C. § 1983 and state law, based

on an "unlawful scheme to deprive [the] Plaintiffs of their

property rights and constitutional rights to equal protection and due process." (Dkt. No. 1, ¶ 1). The defendants move for judgment on the pleadings. (Dkt. No. 24). The plaintiffs oppose the motion and in the alternative move for leave to amend the complaint to assert additional facts. (Dkt. Nos. 26, 27). For the reasons that follow, the motion for judgment on the pleadings is ALLOWED IN PART and DENIED IN PART. The motion for leave to amend is ALLOWED.[1]

## I.   BACKGROUND

The facts are taken from the Amended Complaint, Doc. No. 27 ("Compl." ¶ __), and certain documents submitted by the defendants in connection with their motion. See Dkt. Nos. 25-1, 25-2.[2] This does not constitute a finding by the court that any or all of the alleged facts are true. At this stage of the proceedings, the law requires the court to accept the plaintiffs' allegations as true

---

[1] Although the defendants opposed the motion to amend (Dkt. No. 29), they indicated at the hearing on the motions that they did not oppose the court's consideration of their motion based on the facts alleged in the proposed amended complaint. Given that representation, interests of efficiency and common sense impel the court to allow the motion to amend; the court accordingly considers the facts as alleged in the proposed amended complaint. (Dkt. No. 27, Exh. B).

[2] The two documents consist of (1) a letter dated May 21, 2009, from the engineering firm that reviewed the impact of the anticipated project on the City's water distribution system to the City's Water Department, and (2) a notice from the City's Planning Board dated September 15, 2009, approving the plaintiffs' application for the project at issue. No party disputes the authenticity of the documents or otherwise objects to their submission. Moreover, the complaint refers to the May 2009 report as a relevant document, and the September 2009 notice would appear in any event to be a public record. Accordingly, it is appropriate to consideration the documents at this stage. *See Watterson v. Page,* 987 F.2d 1, 3 (1st Cir. 1993).

and to draw all reasonable inferences flowing therefrom in the plaintiffs' favor. *Watterson,* 987 F.2d at 3.

### **The Parties and the Project**

The plaintiffs are the related entities of (1) Premiere Realty Trust, (2) Michael J. Maroney as Premiere's trustee, and (3) Maroney Construction Company, Inc., of which Michael Maroney is the president. (Compl. ¶¶ 4-5). The defendants are the City, its mayor James Fiorentini (the Mayor), and Robert Ward (Ward), at the time the Deputy Director of Public Works for the City's Water/Wastewater Division. (Compl. ¶¶ 6-8).

In or around 2009, Premiere purchased land off North Broadway in Haverhill with the intent to develop a subdivision known as the Crystal Springs Cluster Development. (Compl. ¶ 9). The development plan consisted of 50 residential lots on Back Nine Drive and Front Nine Drive. (Compl. ¶ 9). Maroney Construction Company, Inc. (MCC) was general contractor for the subdivision, on which development began in 2009. (Compl. ¶¶ 9, 10).

The City had at that time received an engineer's water system evaluation report from Wright-Pierce (the May 2009 report), which indicated that adequate water pressure could not be supplied to the proposed development, and that supplemental pumping might be required in order to ensure adequate fire flow capacity throughout the proposed development. (Compl. ¶ 11). On June 12, 2009, Premiere entered into an agreement with the Haverhill Planning

Board. Under the agreement, Premiere agreed to construct and install municipal ways and services, including a water booster station. In exchange, the Planning Board agreed to release lots for construction. (Compl. ¶ 10).

The Planning Board approved Premiere's subdivision plan on January 25, 2010. (Compl. ¶ 11). However, the issuance of building permits was conditioned on the plaintiffs either installing and testing the utilities shown on the plan, or posting a security bond of $250,000 to guarantee construction of the water booster station, with an effective bond date of November 1, 2016. The plaintiffs chose this latter option. (Compl. ¶¶ 13-15). Because no completion deadline was imposed by the subdivision approval, the water booster station only had to be constructed upon completion of the subdivision, i.e., the effective bond date of November 1, 2016. (Compl. ¶ 13).

As of March 2015, the plaintiffs had constructed and transferred to purchasers 29 homes in the subdivision, completing the Back Nine Drive section of the subdivision, leaving 21 remaining lots on Front Nine Drive. (Compl. ¶¶ 17-18). In March 2015, however, the City, citing water pressure and fire flow capacity issues, abruptly refused to issue further permits related to site applications, foundation, building, and occupancy permits. (Compl. ¶¶ 13, 18, 19). The plaintiffs (through Maroney) met with the Planning and Water Departments on a number of occasions, both

before and after March 2015, in an effort to resolve the City's concerns. (Compl. ¶ 21). Although each of these meetings appeared to result in an agreement on how to proceed, and although the plaintiffs subsequently took certain remedial steps recommended by the City, including the installation of a water line on North Broadway, the City ultimately refused to issue the plaintiffs the permits they needed. (Compl. ¶¶ 20-21).

### The State Court Lawsuit

In an effort to compel the City to release the needed permits, the plaintiffs brought suit in state superior court against the City's Planning Department, Water Department and Building Inspector (the "state court lawsuit"). (Compl. ¶ 22; *Maroney et al v. City of Haverhill Planning Board, et al.,* Dkt. No. 1577-CV-001251). The suit, which remains pending at the time of this opinion, alleges among other things breach of contract, breach of the implied covenant and good faith and fair dealing, and misrepresentation. The parties negotiated a settlement but the City refused to sign it unless Maroney first agreed to drop the lawsuit. (Compl. ¶ 24).

### Evidence of Animus and Disparate Treatment

The plaintiffs suspect that the City has deliberately exaggerated concerns about water pressure and fire flow safety issues at Crystal Springs. (Compl. ¶ 26). The plaintiffs believe that the City has done so as part of a plan to compel the plaintiffs

to alleviate real water pressure concerns at another nearby subdivision, Parsonage Hill. (Compl. ¶ 26). Parsonage Hill was completed several years earlier, in 1995, and the City subsequently allowed six more homes to be built thereafter in 2000, all without regard to whether or how the increased development might adversely impact low water pressure or adequate fire flow issues. (Compl. ¶ 26). The plaintiffs suspect that the City surmised that it could alleviate the issues at Parsonage Hill if it could get the plaintiffs to construct a water booster station in connection with Crystal Springs. (Compl. ¶ 26).

Indeed, the City issued permits to at least three other area developers without requiring them to construct a water booster station. (Compl. ¶ 27). First, in 2012 the City allowed four new homes to be built across from the entrance to Front Nine Drive, using the same water main that Parsonage Hill and Front Nine Drive use. Id. The City did not tell the developer, Steve Franciosa, that there were fire flow or water pressure issues in the area. (Compl. ¶ 27).

Then, in a second instance in 2015, the City approved a subdivision for seven homes at the DelHaven Estates on Broadway. (Compl. ¶ 27). The DelHaven water supply comes from the same water tower that supplies the plaintiffs' Crystal Springs development and the Parsonage Hill development. (Compl. ¶ 27). Moreover, the City's consultant, Wright-Pierce, approved the DelHaven Estates

even though it had no fire flow and insufficient water pressure.
(Compl. ¶ 27). Indeed, the City approved DelHaven Estates despite
an elevation level so high that fire hydrants were omitted and
individual water booster pumps had to be installed in each home to
compensate for the low water pressure. (Compl. ¶ 27).

Finally, the Water Department has allowed the owners of Lot
6, who are related to employees of the Water Department, to move
into their house, which was listed in the allegedly unserviceable
area. (Compl. ¶ 46).

### Current Conditions at Crystal Springs

At present, the Haverhill Fire Department has signed off on
all permits regarding the plaintiffs' development, most recently
on July 7, 2016. (Compl. ¶ 28). The Water Department performed
water logger tests which showed that there was more than sufficient
water pressure, surpassing both the state and municipal minimum
requirements. (Compl. ¶ 29). Recent fire flow testing also
yielded results well within the state and municipal requirements.
(Compl. ¶ 29).

Despite these positive metrics, the City has refused to
endorse a timetable for construction of the water booster station
with benchmark deadlines, although it previously had done so.
(Compl. ¶ 31). In fact, the plaintiffs have since July 2015
constructed a parallel water line as part of the first phase of
building the water booster station, at a cost of $162,000, and

have secured additional financing for the station itself. (Compl. ¶¶ 25, 32).

Further, the plaintiffs' engineer has drafted and submitted plans for the water booster station to the City for approval. (Compl. ¶ 33). But, even though the plans were 95% complete as of January 1, 2016, and were approved by the City's engineering consultant, Wright-Pierce, the Water Department indicated that it was going to scrap the existing designs and begin anew. (Compl. ¶ 33). The plaintiffs' engineers have since accordingly redrafted the plans at considerable cost and expense, and re-submitted them to the City, but the City has yet to approve them. (Compl. ¶ 34). The plaintiffs believe that the refusal to process permits is a direct result of an order from the Mayor's office to refuse permits until the plaintiffs dropped the state litigation. (Compl. ¶ 36).

**The Complaint**

The operative complaint advances four counts. Count I alleges that the defendants deprived the plaintiffs of their Fourteenth Amendment equal protection and substantive due process rights, in violation of 42 U.S.C. § 1983. Count II alleges that the defendants violatied the plaintiffs' civil rights, in violation of the state civil rights statute, M.G.L. c. 12, § 11I. Count III alleges interference with contractual and economic relations. Finally, Count IV alleges that the defendants conspired to refuse to issue permits to the plaintiffs.

## II. LEGAL STANDARD

Courts reviewing a motion for judgment on the pleadings under Rule 12(c) apply essentially the same standard as when reviewing a motion to dismiss under Rule 12(b)(6). *Pasdon v. City of Peabody*, 417 F.3d 225, 226 (1st Cir. 2005). When reviewing a motion to dismiss under Rule 12(b)(6) courts must apply the notice pleading requirements of Rule 8(a)(2). *Educadores Puertorriquenos en Accion v. Hernandez*, 367 F.3d 61, 66-67 (1st Cir. 2004). Under Rule 8(a)(2), a complaint need only include a short and plain statement of the claim showing that the pleader is entitled to relief and giving the defendant fair notice of the grounds for the plaintiff's claim. *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Therefore, "a Court confronted with a Rule 12(b)(6) motion 'may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Educadores Puertorriquenos en Accion* at 66 (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

To demonstrate that one is entitled to relief, the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully," and is met when "the plaintiff pleads factual content that allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 556). However, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. at 678 (quoting *Twombly,* 550 U.S. at 555).

The main difference between a 12(b)(6) and a 12(c) motion is that a 12(c) motion is filed after the pleadings are closed, that is, after both the complaint and answer have been filed. *Santiago v. Bloise*, 741 F. Supp. 2d 357, 360 (D. Mass. 2010). As such, the court will consider the factual allegations in both the complaint and the answer. *Id.* Nevertheless, since the case is still at a very early stage, and given the obligation to view the facts in the light most favorable to the non-movant, the court must treat any allegations in the answer that contradict the complaint as false. *Id.*

## III. ANALYSIS

### A. Count I – Violation of 42 U.S.C. § 1983

Count I alleges a violation of 42 U.S.C. § 1983. Section 1983 creates no independent substantive rights but rather provides a cause of action by which individuals may seek damages for governmental violations of rights protected by federal law. *Albright v. Olivier*, 510 U.S. 266, 271 (1994). To succeed under § 1983, a plaintiff therefore must prove that the challenged

conduct is attributable to a person acting under color of state law, and that the conduct effected a denial of rights secured by the Constitution or by federal law. *See Soto v. Flores*, 103 F.3d 1056, 1061 (1st Cir. 1997). Here, the plaintiffs allege that the defendants violated their right to equal protection under the law, and their right to substantive due process, both protected rights under the Fourteenth Amendment. The court addresses each in turn.

i. *Equal Protection*

The plaintiffs assert a "class of one" equal protection claim. While equal protection claims typically focus on alleged differential treatment of classes, an equal protection claim may be brought by a "class of one" where a plaintiff can demonstrate that (1) he has been intentionally treated differently (2) from others similarly situated, (3) that no rational basis exists for the difference in treatment, and that (4) the different treatment was based on a malicious or bad faith intent to injure the plaintiff. *Buchanan v. Maine*, 469 F.3d 158, 177 (1st Cir. 2006); *Walsh v. Town of Lakeville*, 431 F. Supp. 2d 134, 145 (D. Mass. 2006). Proof of a similarly situated but differently treated comparator is "essential," and the plaintiff must "show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Snyder v. Gaudet*, 756 F.3d 30, 34 (1st Cir. 2014). These "similarly situated" persons must have engaged in essentially the same activity, without

mitigating or distinguishing circumstances that would render the comparison inutile. *Id.* This similarity requirement "must be enforced with particular rigor in the land-use context because zoning decisions 'will often, perhaps almost always, treat one landowner differently from another.'" *Id.* (*quoting Village of Willowbrook* v. *Olech*, 528 U.S. 562, 565 (2000) (Breyer, J., concurring)).

To survive a motion to dismiss (or for judgment on the pleadings), a plaintiff must provide facts that the court can use to determine whether the cited comparable is in any way similar to the plaintiff's project. *Najas Realty, LLC v. Seekonk Water Dist.*, 68 F. Supp. 3d 246, 257 (1st Cir. 2014). In that regard, the "Court must be able to compare 'apples to apples' and not be presented 'with a fruit basket' of different types of allegedly comparable developments." *Clark v. Boscher*, 514 F.3d 107, 114 (1st Cir. 2008).

Here, the defendants assert two primary challenges to the plaintiffs' equal protection claim, arguing: (1) the complaint fails to plead facts sufficient to show that the plaintiffs' project is "similarly situated" to any other projects; and (2) the complaint fails to adequately allege that the defendants acted with malice or bad faith. The plaintiffs may indeed face some difficulty in proving an equal protection violation, but neither

of these challenges justifies dismissal of the equal protection claim at this early juncture of the case.

With respect to similarly situated comparators, the defendants argue that the complaint fails to identify any developers similarly situated to the plaintiffs in all relevant respects. Notably, though, this argument is based on the facts as pled in the original complaint. The court also agrees that the complaint, limited to those factual allegations, falls short of adequately identifying any similarly situated developers. The amended complaint, however, appears to have been intended to specifically redress this issue and does in the court's view set forth enough additional details to push the plaintiffs' equal protection claim over the 12(b)(6) hurdle.

According to the facts alleged in the amended complaint, at least one nearby development, DelHaven Estates, would appear to be similarly situated to the Crystal Springs development. The amended complaint alleges that DelHaven Estates, a subdivision of seven homes which the City approved for development in 2015, will use the same water tower that also serves the Crystal Springs development (as well as Parsonage Hill), and was approved despite the fact that it too purportedly had insufficient water pressure and no fire flow. (Compl. ¶ 27). Significantly, the amended complaint alleges that the DelHaven Estates developers were permitted to remediate the low water pressure issue by installing

individual water booster pumps in each house; by contrast, the
City fabricated concerns about water pressure at Crystal Springs
and ultimately prevented the plaintiffs from taking any steps to
remediate any reported water pressure/flow issues by constructing
a water booster station. (Id.). As such, the amended complaint
alleges that a developer constructing a development near Crystal
Springs, at around the same time, and with similar water pressure
issues, was permitted to proceed while the plaintiffs were
prevented from proceeding.

Understanding that time and discovery will reveal whether
there is real substance to this claim, the court finds for now
that the amended complaint adequately identifies a similarly
situated developer and thus satisfies (for pleading purposes) this
element of an equal protection claim.[3]  *See e.g., Mosdos Chofetz*

---

[3] The amended complaint refers to two other Haverhill developments but the
allegations lack sufficient detail to readily determine whether they are
similarly situated to the plaintiffs' Crystal Springs development. (Compl. ¶
27). With respect to the nearby development known as Parsonage Hill, the
complaint alleges that the defendants allowed six homes to be built there "after
2000" without consideration for water pressure or fire flow, but fails to
articulate any facts (aside from geographic proximity) that would allow the
court conclude that the developments are comparable. (Compl. ¶ 27). Among
other things, where the amended complaint asserts that the defendants were aware
of water capacity issues "as far back as May 21, 2009" (Compl. ¶ 11), any homes
added to Parsonage Hill before 2009 would thus not be relevant, because the
defendants probably would not have been considering water capacity issues when
approving those permits. With respect to the development built by Steve
Franciosa, the plaintiffs allege that the defendants in 2012 gave Franciosa
four building permits to develop homes along the same water main as Front Nine
Drive, but did not tell him that there would be any issues with fire flow or
water pressure in the area, and gave him the permits without any concerns.
(Compl. ¶ 27). As the court reads the amended complaint, however, these facts
do not evince disparate treatment where the plaintiffs also received or
possessed permits to proceed during the same time period, and there is no
allegation that Franciosa thereafter received permits in 2015 that the
plaintiffs were denied.

*Chaim, Inc. v. Vill. Of Wesley Hills*, 815 F. Supp. 2d 679, 697 (S.D.N.Y. 2011) (Although at summary judgment stage court asks whether jury, based on reasonable evidence, could conclude that plaintiff and proposed comparator are similarly situated, such evidence is not necessary at motion to dismiss stage).

In addition, the plaintiffs have sufficiently pled that the defendants' actions were "motivated by malicious or bad faith intent to injure." *Snyder*, 756 F.3d at 34. To evidence this bad faith or malice, the plaintiff must show that the government official's decisions were not simply arbitrary and erroneous; instead, the plaintiff must establish that the defendants' actions constituted a "gross abuse of power." *Tapalian v. Tusino*, 377 F.3d 1, 6 (1st Cir. 2004) (*quoting Baker v. Coxe*, 230 F.3d 470, 474 (1st Cir. 2000)). The amended complaint meets that standard because it alleges that (1) there is in fact no need for a water booster station at Crystal Springs and that the impetus for requiring the plaintiffs to build one is to cure the problems that plague nearby Parsonage Hill; (2) the defendants disingenuously denied the plaintiffs permits based on the false claim that they were obligated to have built the station much earlier; and (3) the Mayor has refused to allow any permits to be released unless the plaintiffs dismiss the state lawsuit. If true, these actions would certainly constitute a gross abuse of power. *See Tapalian,* 337 F.3d at 6 (collecting cases).

To be sure, the defendants argue that these assertions cannot be probative of bad faith or malice. They argue that even assuming the impetus for requiring the plaintiffs to build the booster station was to benefit Parsonage Hill, that fact is irrelevant because the plaintiffs never appealed the requirement. Even assuming that is true, however, proof that the defendants had an ulterior motive for forcing the plaintiffs to build a booster station at Crystal Springs could still be probative of their animus.

The defendants also argue that the court should not credit the allegation that the Mayor has refused to allow anyone to approve any permits for the plaintiffs until they drop the state court lawsuit, because attempting to resolve a lawsuit does not constitute bad faith or malice. The court agrees that there may be benign and wholly justified reasons for encouraging the plaintiffs to dismiss the state court lawsuit, and makes no adverse findings against the defendants in that regard. That being said, if arguendo the Mayor has refused to allow permits to be issued to the plaintiffs, in order to force the plaintiffs to abandon their right to seek redress for a perceived legal wrong, the court has no issue in concluding that such conduct could comprise malice or bad faith.

In sum, the plaintiffs have adequately alleged that the defendants have treated their development differently than others,

that there was no rational basis for the difference, and that the difference in treatment was motivated by malice or bad faith.  As such, the equal protection claim survives the motion for judgment.

### ii. Substantive Due Process

Next, the defendants argue that the plaintiffs have not alleged a cognizable due process claim.  They argue that because the alleged deprivation here is merely a *delay* in the issuance of construction permits, rather than a *denial* of permits, it is questionable whether such conduct constitutes a cognizable property interest able to form the basis of a substantive due process claim.  They argue that even if it could, it is not enough to constitute the type of conscience-shocking conduct required to support a substantive due process claim.

The Fourteenth Amendment provides protection to an individual from state deprivation of life, liberty, or property without due process of law.  U.S. Const. Amend. XIV.  "[S]ubstantive due process ensures that [a state proceeding which results in a deprivation of property] is not arbitrary and capricious." *Licari v. Ferruzzi*, 22 F.3d 344, 347 (1st Cir. 1994).  It prevents the "abuse of government power that shocks the conscience, or action that is ... not sufficiently keyed to any legitimate state interest." *PFZ Props., Inc. v. Rodriguez,* 928 F.2d 28, 31–32 (1st Cir. 1991); *accord Clark*, 514 F.3d at 112.  Although the First Circuit has routinely rejected substantive due process claims in

the zoning and land-use contexts, it has "left the door slightly ajar for federal relief in truly horrendous situations." *Nestor Colon Medina & Sucesores Inc. v. Custodio*, 964 F.2d 32, 45 (1st Cir. 1992); *accord Licari*, 22 F.3d at 350; *Collier v. Town of Harvard*, No. 95-cv-11652, 1997 WL 33781338, at *5 (D. Mass. Mar. 28, 1997); *see Chongris v. Board of Appeals*, 811 F.2d 36, 43 (1st Cir. 1987) (noting "even abridgments of state law [in the land-use context] committed in bad faith do not necessarily amount to constitutional deprivation of due process," but acknowledging that there could exist a "type of egregious official behavior which could conceivably work a breach of the due process clause"); *cf. Gianfrancesco v. Town of Wrentham*, 712 F.3d 634 (1st Cir. 2013) (finding "vague" complaints of "a pattern of selective and excessive enforcement of municipal regulations" were not conscience-shocking).

To state such a claim in this Circuit in the land-use context, a plaintiff must allege "fundamental procedural irregularity, racial animus, or the like," or violation of "a fundamental principle." *Clark*, 514 F.3d at 113 (internal quotations omitted); *cf. Nestor Colon Medina*, 964 F.2d at 45-47 (noting a plaintiff must demonstrate a "high" level of "abuse of government power," and distinguishing between actions demonstrating "personal hostility toward the applicants" and obstacles that "any other developer would have faced"). For example, another session of

this court permitted a substantive due process claim to not only survive through discovery but also proceed to trial where the plaintiffs had adduced evidence of governmental coercion and extortion to further the personal interests of a local official. *Collier*, 1997 WL 33781338, at \*5–7. Among other things, there was evidence that the defendants visited the plaintiff at his home and told him that "things would go a lot more smoothly . . . if [the plaintiff] gave [a defendant] the easement that he wanted." The court concluded that because the plaintiff had alleged specific facts that were more than just "loose claims of conspiracy and corruption," a reasonable jury could find that a substantive due process violation had been committed. *Id.*

In yet another matter, a court in this session concluded that the plaintiffs had done enough at the pleading stage to distinguish their allegations from the sort of "run of the mill land-use claims often brought by disappointed developers and rejected by the federal courts in this jurisdiction" where they alleged that the mayor had led an orchestrated campaign against the developers by changing zoning laws that only affected the plaintiffs' project, refusing to issue water permits to the plaintiffs' property, and forcing the plaintiffs to repeatedly engage in frivolous litigation that was intended to expend the plaintiffs' resources. *Brockton Power LLC v. City of Brockton* 948 F. Supp. 2d 48, 69 (D. Mass. 2013).

Considering the foregoing here and, importantly, accepting all of the allegations in the amended complaint as true as the court is constrained to do, the plaintiffs have done enough at this stage of the proceedings to state a valid substantive due process claim against the Mayor and Ward. In particular, where the plaintiffs allege that the fire department has signed off on all building and site application permits, that the water department has determined that the water pressure at Crystal Springs exceeds state and municipal requirements, that the City's own water tests have shown that the plaintiffs' subdivision meets all state and municipal fire flow requirements, but that the City, instead of allowing the plaintiffs to proceed, has required them to build a booster station to address issues at another development, has prevented them from building the booster station, and has moreover held the allowance of any additional permits hostage to force the plaintiffs to drop the state court lawsuit, they allege that the defendants have engaged in arbitrary and capricious conscience-shocking conduct. *See e.g., Dolan v. City of Tigard*, 512 U.S. 374, 387 (1994) (where there is no nexus between a permit condition and a legitimate state interest, valid land regulation is converted into an "out-and-out plan of extortion").

But, the court agrees with the defendants that the complaint as framed fails to state a valid § 1983 claim against the City.

It is well established that a municipality cannot be held liable under § 1983 for the acts of its employees unless a plaintiff has shown that the violation occurred as a result of an official policy or custom of the municipality. *Freeman v. Town of Hudson*, 714 F.3d 29, 37-38 (1st Cir. 2013) (*citing Monell v. Dept. of Soc. Servs. Of the City of New York*, 436 U.S. 658, 694 (1978)). "The 'official policy' requirement was intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986). The decision of a municipal policymaker only constitutes official policy where the "decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Freeman,* 714 F.3d at 38. In order to make this determination, "[c]ourts must look to state law, including 'valid local ordinances and regulations," for descriptions of the duties and obligations of putative policymakers in the relevant area at issue.'" *Id*.

Here, although the complaint alleges among other things that "[t]he Mayor has directed the Water Department not to issue any permits until the [state court lawsuit] is voluntarily dismissed" (Compl. ¶ 43), it fails to reference any state or local laws establishing the policy making authority of the Mayor or any City officials involved. Anecdotal allegations that the Mayor has told

Maroney and/or others that the plaintiffs could receive the needed permits if Maroney dropped the state court lawsuit, while suggestive of political clout, fail without more to constitute proof that the City has actually delegated policy making authority on this matter to the Mayor.  Accordingly, Count I is dismissed against the City, but without prejudice to the plaintiffs' ability to seek to amend.

### iii. *Qualified Immunity*

The defendants argue that assuming any constitutional violation occurred, they enjoy qualified immunity from liability. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  At the motion to dismiss stage "it is the defendant's conduct *as alleged in the complaint* that is scrutinized for 'objective legal reasonableness.'" *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) (emphasis original).  Here, the court presumes without finding that manipulating and abusing the permitting process in order to coerce the plaintiffs into building an unneeded water booster station to cure problems at another development, as well as to coerce them into dropping a potentially non-frivolous lawsuit, would violate a clearly established statutory or constitutional right.

It is generally unwise though to venture into a qualified immunity analysis at the pleading stage because in the majority of cases it is necessary to develop the factual record to test the veracity of the complaint's allegations. *See Giragosian v. Bettencourt*, 614 F.3d 25, 29 (1st Cir. 2010) ("[i]t is not always possible to determine before any discovery has occurred whether a defendant is entitled to qualified immunity, and courts often evaluate qualified immunity defenses at the summary judgment stage."). Consequently, if qualified immunity is not granted at the motion to dismiss stage, nothing prevents a party from raising it again after further development of the facts. *Maldonado v. Fontanes*, 568 F.3d 263, 268 (1st Cir. 2009); *see also Olivio Gonzalez v. Teacher's Retirement Bd.*, 208 F. Supp. 2d 163, 167 (D.P.R. 2002) ("Since the issue of qualified immunity has been raised in the context of a motion to dismiss, and we conclude that the complaint contains sufficient factual allegations that could prohibit Defendants' reliance on the doctrine of qualified immunity, the court can proceed no further. However, Defendants are free to raise this issue in the context of a motion for summary judgment."). Therefore, the court will deny the motion for judgment on the grounds of a qualified immunity defense at this stage of the litigation, without prejudice to the defendants' ability to renew.

**B. Remaining Claims: Violation of M.G.L. c. 12 § 11; Interference with Contractual and Economic Relations; and Common Law Conspiracy. (Counts II-IV)**

*i. Count II: Violation of the Massachusetts Civil Rights Act*

The Massachusetts Civil Rights Act (MCRA) provides a cause of action for any person whose rights under the Constitution, federal law, or state law have been interfered with by threats, intimidation, or coercion of another. *See* M.G.L. c. 12, §§ 11H, 11I. "The Supreme Judicial Court of Massachusetts has interpreted the MCRA to be co-extensive with § 1983 except for two disparities: (1) the MCRA does not require any state action (i.e., there is no "under color of state law" requirement), and (2) a claim under the MCRA requires a violation by threats, intimidation, or coercion." *Kelley v. LaForce*, 288 F.3d 1, 10 (1st Cir. 2002) (internal quotation marks original).

Because the court has already determined that Count I states a valid § 1983, the MCRA claim also survives against the individual defendants for the same reasons. However, the court agrees that Count II must be dismissed against the City because a municipality is not a "person" within the meaning of the statute and therefore cannot be sued under the MCRA. *McCarthy v. Szoztkiewicz*, 188 F. Supp. 2d 64, 71 (D. Mass. 2002).

*ii. Count III: Interference with Contractual Relations*

Count III alleges that the defendants interfered with the plaintiffs' contractual relations. To establish a claim of intentional interference, a plaintiff must prove that (1) it had a contract with a third party; (2) the defendant knowingly induced the third party to break that contract; (3) the defendant's interference, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions. *G.S. Enters., v. Falmouth Marine, Inc.,* 410 Mass. 262, 272 (1991). As to the third prong, which is at issue here, a plaintiff need only establish either improper means or motive, not both, to sustain a claim of tortious interference. *See Cavicchi v. Koski,* 67 Mass. App. Ct. 654, 658 (2006).

The defendants argue that Count III fails to state a claim against the individual defendants because the plaintiffs have not sufficiently alleged bad faith or malice. However, as the court has already found in discussing the plaintiffs' equal protection claim that the complaint does in fact adequately allege that the defendants were motivated by bad faith or malice, the court rejects this argument and finds that Count III states a valid claim for interference with contractual relations. By contrast, Count III fails to state a claim against the City because municipalities are immune from claims of intentional torts pursuant to the Massachusetts Tort Claims Act, G.L. c. 258, §10(c). *See Felix v.*

*Town of Randolph*, No. 12-10997-GAO, 2013 WL 3830840, at *4 (D. Mass. July 22, 2013).

### iii. *Count IV: Common Law Conspiracy*

Count IV as originally drafted alleged that the individual defendants conspired to violate the plaintiffs' civil rights, in violation of 42 U.S.C. §§ 1985 and 1986.  The defendants argue that this claim fails because a plaintiff must prove class based discrimination to prove a civil rights conspiracy, and the complaint does not allege that here.  However, the amended complaint removes the references to §§ 1985 and 1986 and now alleges only a common law conspiracy claim.  As such, there is no basis to strike the claim.

### IV.  CONCLUSION

For the foregoing reasons, the Defendants' Motion for Judgment on the Pleadings (Dkt. No. 24) is ALLOWED IN PART and DENIED IN PART.  Specifically, the motion is ALLOWED with respect to the claims against the City in Counts I, II and III, and DENIED with respect to the claims against the individual defendants in Counts I, II, III and IV.  The Plaintffs' Motion to Amend (Dkt. No. 27) is ALLOWED.

/s/ Donald L. Cabell
DONALD L. CABELL, U.S.M.J.

DATED:  December 7, 2017