UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MICHAEL J. MARONEY, as TRUSTEE
OF PREMIERE REALTY TRUST and
MARONEY CONSTRUCTION
COMPANY INC.,                                    No. 16-CV-11575-DLC

          Plaintiffs,

v.

JAMES J. FIORENTINI, and ROBERT
E. WARD,

          Defendants.

**ORDER ON DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS**

CABELL, U.S.M.J.

**INTRODUCTION**

This matter arises from a long-running dispute between residential developer Michael Maroney and various individuals and departments connected with the City of Haverhill ("the City").[1] Maroney needed certain permits to advance a subdivision project, but the City refused to issue them. Frustrated, Maroney sued several entities in state court, *see Maroney v. City of Haverhill Planning Bd.*, No. 1577-CV-001251 (Mass. Essex Sup. Ct. filed July 23, 2015), and then initiated the present action while the state

---

[1] Maroney sues on behalf of the eponymously named Maroney Construction Company, Inc., as well as in his capacity as the trustee of Premiere Realty Trust. For ease, the court uses "Maroney" or "the plaintiff" to refer to these entities.

1

court action was still pending.[2]   The state court action was subsequently resolved on the merits in the defendants' favor. Defendant Fiorentini, who was not a defendant in the state matter, and defendant Ward, who was, move for judgment on the pleadings on the ground that res judicata bars the present claims because they are similar to those raised in the state court matter.   (D. 61). For the reasons that follow the defendants' motion will be ALLOWED in part and DENIED in part.

I.   **BACKGROUND**

   A. **The Parties and the Development**

   In or around 2009 Maroney purchased land in Haverhill to build the Crystal Springs Cluster subdivision, a project that was to include 50 residential lots on Back Nine Drive and Front Nine Drive.  (Amended Complaint, D. 51 ¶ 9).   While subdivision approval was pending, the City received a professional evaluation indicating that the homes on Front Nine Drive would have inadequate water pressure to satisfy city standards for home and fire flow. (Id. ¶ 11).   To address this problem, the plaintiff entered into an agreement with the Haverhill Planning Board to construct and install municipal ways and services, including a water booster

---

[2] The defendants in the state court lawsuit were the City's Planning Board; William Pillsbury, the City's Economic Development and Planning Director; Robert E. Ward, the City's Deputy Director of the Department of Public Works, Waste/Wastewater Divisions; and Richard Osborne, the City's Building Inspector.  The defendants in the federal matter presently include the City's Mayor (Fiorentini) and Ward, in their individual capacities.

station.  In exchange, the Planning Board agreed to release lots for construction as they became serviceable, i.e., when the property was ready to receive utility services.  (Id. ¶ 10).

The plaintiff completed the homes on Back Nine Drive, for which he received all required permits.  (Id. ¶17).  The City Water Department refused to issue him permits for Front Nine Drive, however, because the water pressure and fire flow issues for that part of the development had not been addressed.  (Id. ¶19).

## B. **The State Court Action**

In an effort to compel the City to issue the needed permits, the plaintiff brought the state court action against the City's Planning Board and various departments.[3]  (D. 51, ¶ 22).  The complaint asserted claims for breach of contract, breach of the duty of good faith and fair dealing, and misrepresentation, and sought as relief damages, a declaratory judgment that the plaintiff had satisfied all necessary permitting requirements, a writ of mandamus compelling the City to issue the necessary permits, and an injunction enjoining the City from refusing to issue the permits.  (Id.).

In response, City Building Inspector Richard Osborne counterclaimed for violation of the Massachusetts Residential

---

[3] The only person named in both the federal and state actions is Robert E. Ward, the City's Deputy Director of Public Works.  In the state lawsuit, however, he was named in his official capacity; here, he remains a defendant in his individual capacity only.

Building Code and the City Zoning Law, and all defendants moved for summary judgment on the plaintiff's claims as well as Osborne's counterclaims.  The plaintiff in turn filed a cross-motion for summary judgment on Osborne's counterclaims.

The state court denied the plaintiff's motion and granted the defendants' motions in their entirety.  *See Memorandum of Decision and Order* (Feb. 12, 2018) (*Memorandum*).  (D. 62-1).  The state court made the following findings of fact among others in so doing:

1. The City's water reports determined in 2009 that certain lots on Front Nine Drive would not be serviceable —i.e., ready to receive all utilities— because of inadequate water pressure.  *Id.* at 5-6.

2. Maroney initially proposed building a water booster station to address the City's water pressure concerns, and Maroney's engineer acknowledged the need for a water booster station.  *Id.* at 4.

3. Maroney agreed with the City that the booster station was necessary to meet water pressure and hydrant flow requirements.  *Id.* at 17.

4. The City Planning Board's approval of the subdivision plan for the subdivision included documents from the Water Department about the need for the water booster station.  *Id.* at 5.

5. In September of 2009, Maroney asked the City for permission to build homes on Back Nine Drive ("Phase I"), which did not need enhanced water pressure, before constructing the water booster station. The Water Department and the Planning Director agreed to this request so long as those homes did not require water boosting.  *Id.* at 6-7.

6. Maroney agreed to build the water booster station before beginning construction of the homes on Front Nine Drive ("Phase II"), but he never built the station.  *Id.* at 19.

7. In May of 2013, Maroney submitted a water boosting station plan to the Water Department, which made comments and revisions.  Thereafter, Maroney never submitted a water boosting station design found acceptable by the City.  *Id.* at 12.

8. After completion of Phase I, Maroney began building Phase II homes on lots the City had deemed unserviceable without first having built the water booster station or obtained permits.  *Id.*

After rejecting Maroney's contention that the subdivision plan was a binding agreement that could not be altered by other requirements, *id.* at 16-17, the state court found that even if it accepted Maroney's argument, his equitable claims would still fail because he had not shown he was wrongfully denied any permits. The court noted *inter alia* that it was undisputed that (1) the parties agreed from an early point that a booster station was necessary; (2) the booster station was included in the definitive subdivision plan; (3) Maroney agreed he would construct the booster station after completing Phase I; and (4) Maroney never constructed a water booster station.  The court stated that "[w]here Maroney did not construct the booster station, as the definitive subdivision plan required, the court fails to see how he can legitimately claim the Haverhill Defendants failed to process and/or issue permits to which he was entitled."  *Id.* at 17-18.

Maroney also argued that a water booster station was not actually necessary to meet City water pressure requirements, but the state court found this point irrelevant where the Planning

Board had found otherwise and had conditioned the plan's approval on Maroney's agreement that a booster station was required.  *Id.* at 18.

The court also rejected Maroney's contention that he had until November 1, 2016 to build the water booster station, finding instead that Maroney had agreed to build the station after completing Phase I.  The court also found that to the extent Maroney sought permits to build on lots the City deemed unserviceable, "the Department was free to deny those permits, no matter the date, until the booster station was constructed."  *Id.* at 18-19.

### C. **The Present Lawsuit**

The amended complaint alleges that the City has refused to sign off on a timetable to complete the water booster station, even though the plaintiff has submitted a proposal for the water booster station, laid water lines as a preliminary step, and secured additional funding for the station construction.  (D. 51 ¶¶ 20, 32-24).  The plaintiff contends that the City refused to do so in order to force Maroney to drop the state court lawsuit.  (Id. ¶ 36).  Specifically, the plaintiff alleges that Fiorentini made statements to Maroney and others that Maroney would not get any permits until he dropped the lawsuit, and specifically directed the Water Department not to issue any permits.  (Id. ¶¶ 37-41).  The plaintiff claims federal due process and equal protection

violations (Count I); state civil rights violations (Count II);
interference with contractual and economic relations (Count III);
and conspiracy to deny civil rights under state and federal law
(Count IV).

## II.   <u>LEGAL STANDARD</u>

The defendants move for a judgment on the pleadings pursuant
to Federal Rule of Civil Procedure 12(c).  That rule provides that
"[a]fter the pleadings are closed —but early enough not to delay
trial— a party may move for judgment on the pleadings."  Fed. R.
Civ. P. 12(c).  A motion for judgment on the pleadings is treated
like a motion to dismiss under Fed. R. Civ. P. 12(b)(6), except
that a "'Rule 12(c) motion . . . implicates the pleadings as a
whole'" rather than a dismissal based on the complaint alone.
*Kimmel & Silverman, P.C. v. Porro*, 969 F. Supp.2d 46, 49 (D. Mass.
2013) (quoting *Aponte-Torres v. University of P.R.*, 445 F.3d 50,
54-55 (1st Cir. 2006)).  Because a motion for judgment on the
pleadings requires "assessment of the merits, we view the facts
contained in the pleadings in the light most favorable to the party
opposing the motion . . . ."  *Curran v. Cousins*, 509 F.3d 36, 43
(1st Cir. 2007).

The court may also consider matters fairly incorporated
within the complaint or susceptible to judicial notice.  *Id.; In
re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 15 (1st Cir. 2003).
Where the motion is based on a claim of res judicata, the court

may take judicial notice of the record in the original action. *See Boateng v. InterAmerican Univ.*, 210 F.3d 56, 60 (1st Cir. 2000) (court may treat documents from prior court adjudication as public record).

## III. ANALYSIS

### A. Applicable Law

The defendants argue that the plaintiff's claims are barred under the doctrine of res judicata by the findings of the Massachusetts Superior Court in the plaintiff's state court action.  Whether and to what extent the plaintiff's claims may be so barred is determined under Massachusetts law.  *See Isaac v. Schwartz,* 706 F.2d 15, 16 (1st Cir. 1983) ("[f]ederal courts are to give state court judgments the res judicata effect that state law prescribes").  Massachusetts uses the term "res judicata" generally to describe the doctrine under which a previous judgment can have binding effect upon a subsequent action. *Kelso v. Kelso*, 86 Mass. App. Ct. 226, 229 (2014).  In fact, though, res judicata encompasses two prongs, claim preclusion and issue preclusion.

Claim preclusion operates at the level of the claim, or cause of action, alleged in each proceeding.  It is based on the notion that the party against whom claim preclusion is being asserted had the opportunity and motivation to fully litigate the claim in the earlier action. *In re: Sonus Networks, Inc. Shareholder Derivative Litigation*, 499 F.3d 47, 56 (1st Cir. 2007) (applying Massachusetts

law).  Therefore, claim preclusion bars all matters that were or could have been adjudicated in the earlier action on the claim. *Id.*  In order for claim preclusion to apply, the respective parties must be identical or in privity with the parties in the prior action, the causes of action must be the same or arise from the same nucleus of operative facts, and there must have been a final judgment on the merits in the prior action.  *Cavic v. America's Servicing Co.*, 806 F. Supp.2d 288, 290 (D. Mass. 2011).

By contrast, issue preclusion, which is sometimes also referred to as "collateral estoppel," *see, e.g., Meltzer v. Epstein Becker & Green*, 233 F. Supp.2d 213, 217 (D. Mass. 2002), bars re-litigation of issues of law and fact that were determined in an earlier action, and it can apply even if those issues arise in a completely different claim in the second action.  *TLT Constr. Corp. v. A. Anthony Tappe & Assocs.*, 48 Mass. App. Ct. 1, 5 (1999) (citing *Heacock v. Heacock*, 402 Mass. 21, 23 n.2 (1988)).

A party asserting issue preclusion/collateral estoppel must show that (1) there was a final judgment on the merits in a prior adjudication; (2) the plaintiff was a party (or in privity with a party) to the prior adjudication; (3) the issue in the prior adjudication is identical to the issue in the current adjudication; and (4) the issue decided in the prior litigation was essential to the earlier judgment.  *Commissioner of the Dept. of Employment & Training v. Dugan*, 428 Mass. 138, 142 (1998).  While strict

essentiality is not required, the issue must have been the subject of full litigation and careful decision. *Id.* at 144. Issue preclusion typically acts to bar re-litigation of any issue, but it may also bar an entire claim where the issue precluded is an essential element of that claim. *Montesa v. Schwartz*, No. 12-CV-6057, 2016 WL 8140048, at *2 (S.D.N.Y. Jan. 13, 2016); *see generally Vargas-Colón v. Fundación Damas, Inc.*, 864 F.3d 14 (1st Cir. 2017)(earlier determination that defendant did not own hospital barred plaintiff's later claim for malpractice against defendant).

### B. <u>Application of Claim Preclusion</u>

Applying the foregoing here, the doctrine of claim preclusion does not apply because the privity of parties requirement is not fully satisfied. Although Defendant Ward appears in the caption of both lawsuits, he was sued in the state court action in his *official* capacity as a Deputy Director for the City's Department of Public Works but remains as a defendant in the present case only in his *individual* capacity. This matters because "a person sued only in his official capacity is neither identical to, not in privity with, the same person sued in his individual capacity." *Goldstein v. Galvin*, 719 F.3d 16, 23 (1st Cir. 2013). Further, defendant Fiorentini was not named in any capacity in the state court matter. In short, the doctrine of claim preclusion does not apply to or bar any portion of the present action.

C. **Application of Issue Preclusion**

By contrast, the initial threshold requirements for issue preclusion/collateral estoppel are met here where the state court action was adjudicated on the merits and the plaintiff was a party in the action.  Thus, the court must examine the state court's factual findings and legal conclusions to determine which issues were the subject of full litigation and careful deliberation; that is, the court must determine whether any issue in this case is identical to an issue that was adjudicated in the prior action, and whether that issue was essential to that court's judgment. The court must then evaluate what effect, if any, such issues have on the plaintiff's present claims.

1. *Violation of 42 U.S.C. § 1983*

Count I of the amended complaint alleges pursuant to 42 U.S.C. § 1983 that the defendants violated Maroney's rights to equal protection and also his right to substantive due process.

With respect to the first prong of the claim, Maroney contends that he was denied equal protection when the City required him to construct a water booster station in order to get necessary permits but issued permits to other developers without requiring them to do the same.  To prevail on this claim Maroney must show among other things that there was no rational basis for the difference in treatment between him and other similarly situated developers. *Buchanan v. Maine*, 469 F.3d 158, 177 (1st Cir. 2006).  In denying

the defendants' prior motion for judgment on this count, the court, as required, accepted as true Maroney's assertion that he had until November of 2016 to construct the station.  The court found on that basis that Maroney thus raised a colorable claim that there was no rational basis to deny him permits in March of 2015 because his deadline had not yet passed.  (D. 51 ¶15).

Notably, though, the plaintiff litigated this factual issue in the state court action and the court found contrarily that Maroney had agreed to build the water booster station after completing Phase I, which was earlier than November 2016.  The court's factual finding was indisputably essential to its reasoning and conclusion that Maroney thus had no basis to "legitimately claim the Haverhill Defendants failed to process and/or issue permits to which he was entitled," and that "the Department was free to deny those permits, no matter the date, until the booster station was constructed." *Memorandum* at 17-18.

Against this backdrop, the court is constrained to adopt the state court's finding that the plaintiff agreed both that a water booster station was necessary and that he would build the station after completing Phase I.  Accordingly, the plaintiff is estopped from arguing differently here that he at all times had until November 2016 to do so.  As such, the plaintiff no longer has a basis for arguing that there was no rational basis for the difference in treatment between him and any other similarly

situated developer; there was in fact a rational basis for denying him a permit where he failed to construct a water booster station after completing Phase I.   Count I thus fails to state a viable equal protection claim.

With respect to Maroney's substantive due process claim, this court previously concluded that the complaint adequately pled a viable claim for relief based in part on two factual allegations, including that the City was forcing the plaintiff to build the booster station to benefit a pre-existing development, and that a water station was arguably not even necessary.  (D. 51, ¶¶ 26, 30-31).

The plaintiff litigated the latter allegation in the state court action, however.   Although Maroney did not raise the necessity of a water booster station until he filed his motion for summary judgment, the court considered this issue and observed that when Maroney's plans were approved, the Planning Board's then-available data indicated that a water booster station was needed. As Maroney agreed to this condition, he could not thereafter argue that the condition was unreasonable.  *Memorandum* at 18-19.   In this light, this court finds that, although the state court was not obligated to consider this issue, it did give it full consideration and its finding was essential to its judgment that Maroney's rights were not violated by the denial of a permit.

That being said, the court finds that the complaint continues to plead a viable substantive due process claim even absent this allegation. As discussed more fully in the court's memorandum on the first Motion for Judgment on the Pleadings (D. 52), a substantive due process "'protects individuals from particularly offensive actions on the part of government officials, even when the government employs facially neutral procedures in carrying out those actions.'" *Freeman v. Town of Hudson*, 714 F.3d 29, 40 (1st Cir. 2013) (quoting *Pagán v. Calderón,* 448 F.3d 16, 32 (1st Cir. 2006)).

To be sure, the standard for prevailing in such actions in the land use context is high. It is not enough for a plaintiff to challenge a discretionary licensing or permitting decision, even if that decision is wrong. *Mongeau v. City of Marlborough*, 492 F.3d 14, 17 (1st Cir. 2007). Instead, a plaintiff must allege a "fundamental procedural irregularity, racial animus, or the like" or violation of "a fundamental principle." *Clark v. Boscher,* 514 F.3d 107, 113 (1st Cir. 2008) (citations omitted). A plaintiff must also make a plausible allegation that he has a protected property interest under state law. *Caesars Mass. Mgmt. Co. v. Crosby*, 778 F.3d 327, 332 (1st Cir. 2015). Massachusetts has recognized a property interest where a plaintiff alleges that a state actor has interfered with his right to obtain permits to make improvements on his land. *See, e.g., Kennie v. Natural*

14

*Resources Dept. of Dennis*, 451 Mass. 754, 763 (2008) (property owners seeking permit to build waterfront dock could pursue substantive due process claim against seafood constable who allegedly planted shellfish in sufficient quantities to provide basis for permit denial and compel owners to withdraw their application).

In the court's view, the plaintiff meets that pleading standard here where he alleges that the defendants have infringed his right to obtain permits to develop his property. (D. 51, ¶ 48). The plaintiff provides three specific instances in which Fiorentini purportedly told Maroney or others that the plaintiff would not receive any permits until he dropped his state court suit. (Id. ¶¶ 37-41). This includes Fiorentini telling Maroney, "You drop the lawsuit, we'll give you all the permits your want!" The plaintiff has also alleged that Fiorentini directed the Water Department, under the authority of defendant Ward, to continue to refuse to issue permits until the lawsuit was voluntarily dismissed. (Id. ¶ 43).

Further, although the plaintiff took steps to build the booster station and had plans approved by a City engineering consultant, the Water Department decided to scrap Maroney's design and start over, and it never acted upon re-drafted plans submitted by the plaintiff. (Id. ¶¶ 33-34). The plaintiff claims that the City's *continued* refusal to approve a water booster station design

15

(which leads to a refusal to issue permits) was also due to Fiorentini's insisting that the plaintiff first dismiss the state lawsuit.  (Id. ¶ 36).

The defendants argue that conditioning an action upon the dismissal of a lawsuit is a perfectly normal course of conduct. Perhaps, but it depends on the circumstances.  At this early juncture, where discovery has not yet fleshed out whether any overtures made to the plaintiff regarding dismissal of the state action were benign or otherwise, the plaintiff has alleged conduct which, if true, could shock the conscience of a reasonable person. *See Brockton Power LLC v. City of Brockton*, 948 F. Supp.2d 48, 69 (D. Mass. 2013) (plaintiffs sufficiently pled substantive due process violation when they alleged that mayor led orchestrated campaign by changing zoning laws to impact plaintiffs only; refused to issue permits for plaintiffs' property; and forced the plaintiffs to repeatedly engage in frivolous litigation).  The motion as to the plaintiff's substantive due process claim is therefore denied.[4]

2. *The State Claims*

The complaint also asserts state claims for (i) violation of the Massachusetts Civil Rights Act (MCRA), M.G.L. c. 12 § 11, (ii); Interference with Contractual and Economic Relations, and (iii)

---

[4] For the reasons stated in its earlier memorandum, the court also finds that dismissal based on qualified immunity is not appropriate at this stage of the proceedings.  (D. 52, pp. 22-23).

civil conspiracy.  The court finds that none of these claims is barred as a result of the state court action.

Regarding the civil rights claim, the MCRA is co-extensive with § 1983.  It does not require state action but it does require threats, intimidation, or coercion.  *Kelley v. LaForce*, 288 F.3d 1, 10 (1st Cir. 2002).  Maroney contends that Fiorentini called him into his office, claimed Maroney owed the City $250,000, but told him if he dropped the lawsuit he would get all the permits he wanted.  (D. 51, ¶ 37).  Fiorentini also allegedly told individuals who had signed contracts to purchase homes in the disputed area that he had met with Maroney and that "Mr. Maroney knows what he has to do."  (Id. ¶ 41).  Notwithstanding that some of the plaintiff's allegations concern matters precluded by the state court decision (e.g., id. ¶ 44), the allegations concerning Fiorentini are distinct from claims Maroney advanced in that action and thus may be relied upon to allege that the plaintiff was denied due process by intimidation at the very least.  The complaint therefore asserts a valid MCRA claim.

The complaint also sufficiently pleads the elements of the tort of interference with contractual or economic relations, although it certainly could be more detailed.  To prevail a plaintiff must show: "'(1) the existence of a contract or business relationship which contemplated economic benefit; (2) the defendant['s] knowledge of the contract or business relationship;

17

(3) the defendant['s] intentional interference with the contract
or business relationship for an improper purpose or by improper
means; and (4) damages." *Braintree Labs., Inc. v. Bedrock
Logistics, LLC*, No. 16-cv-11936, 2018 WL 4100040, at *8 (D. Mass.
Aug. 28, 2018) (alterations in original) (quoting *Swanset Dev.
Corp. v. City of Taunton*, 668 N.E.2d 333, 338 (Mass. 1996)). The
plaintiff alleges that due to the defendants' actions, he has
potentially lost substantial sums of money because he cannot
develop his remaining lots as contemplated. (D. 51, ¶ 41). He
also claims that Fiorentini met with twelve people already under
contract with the plaintiff to buy homes and told them that there
was no timetable to complete the water station and, when asked by
a realtor if the plaintiff would need to drop his lawsuit before
being allowed to proceed, Fiorentini nodded yes. (Id. ¶40).
Again, even when precluded allegations are discounted, these
allegations on their own sufficiently allege that the plaintiff
anticipated economic benefit from the completion of the
development, the defendants knew about the development, they
intentionally interfered with prospective purchasers so that the
plaintiff would drop his lawsuit, and the plaintiff suffered
damages.

Regarding the final state claim for civil conspiracy, a
complaint must allege facts sufficient to show that "the
defendants, acting in unison, had some peculiar power of coercion

over plaintiff that they would not have had if they had been acting independently" (coercion-type conspiracy), or that the defendants had a common design or agreement to do a wrongful act and committed a tortious act in furtherance of the agreement (concerted action conspiracy). *Aetna Cas. Sur. Co. v. P&B Autobody*, 43 F.3d 1546, 1563-64 (1st Cir. 1994). The complaint meets this standard where it alleges that Fiorentini directed the Water Department not to issue any permits until the state lawsuit was voluntarily dismissed and the water department, overseen by Ward, agreed. (D. 51 ¶ 43). The alleged conduct post-dates the filing of the state court action and thus is not precluded by it.

## IV.  CONCLUSION

For the foregoing reasons, the defendants' Motion for Judgment on the Pleadings (D. 61) is **ALLOWED in part** and **DENIED in part**. The portion of Count I of the amended complaint alleging a violation of the plaintiff's right to equal protection is dismissed. The motion is otherwise denied with respect to the remaining portion of Count I alleging a deprivation of substantive due process, and is also denied with respect to Counts II, III, and IV.

**SO ORDERED.**

/s/Donald L. Cabell_____
Donald L. Cabell, U.S.M.J.

Dated:     September 13, 2019